United States District Court
Southern District of Texas
**ENTERED**
February 11, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Billy Desai, | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action H-19-2842 |
| | § | |
| Invesco Group Services, Inc., | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Billy Desai, a portfolio advisory specialist for Invesco Group Services, Inc., (Invesco), took paid parental leave under company policy. Midway through his leave, Invesco notified Desai that he would be terminated before his return to work as part of a reduction in force. Invesco paid Desai through the end of his approved leave.

Desai sued Invesco alleging it violated the Family and Medical Leave Act (FMLA) by retaliating against him for taking leave and by failing to reinstate him to his position at the end of his approved leave. After the close of discovery, Invesco moved for summary judgment on both claims. (D.E. 20.) The court recommends that Invesco's motion for summary judgment be denied.

## 1. Background

Invesco employed Desai in January 2017 as a portfolio advisory specialist. (D.E. 21-1 at 7.) As of early 2018, Scott Yasharian, Invesco's director of advisory solutions at the time, was Desai's immediate supervisor. (D.E. 21-1 at 11; D.E. 21-2 at 4–5.) Throughout 2017 and 2018, Desai testified he received "many positive comments" about his work performance. (D.E. 21-1 at 22.) Desai testified that he "was doing more projects and doing more client meetings than almost anyone on the team," ranking number one in 2017 and one or two in 2018. *Id.*

Invesco's FMLA policy provided up to eighteen weeks of parental leave for bonding with a new child. (D.E. 21-1 at 9–10.) Invesco's paid parental leave policy offered up to ten weeks of paid leave for employees after a qualifying family event such as the birth of a child. *Id.* at 10. In situations where employees qualify for both, FMLA leave and paid parental leave would run concurrently. *Id.*

Desai testified that when his wife was pregnant in early 2018, two Invesco team members "warned" him that "it might not be a good idea to take [ten weeks] off for parental leave." (D.E. 21-1 at 12.) Desai testified that he thought one of the two had his bonus cut after taking leave. *Id.* On May 28,

2

2018, Desai's wife gave birth to a daughter. *Id.* at 11. According to Desai, he did not feel the need to take parental leave initially. *Id.* He testified that, after six months, he decided to apply for parental leave because his "wife needed the help." *Id.*

At a large team meeting in November 2018, Duy Nguyen, chief investment officer, fielded questions from team members. (D.E. 21-1 at 23; D.E. 21-4 at 2.) According to Desai, he "simply asked a question" about whether the portfolio advisory specialists would "in the future have more opportunity to have client inter-facing opportunities." (D.E. 21-1 at 15.) According to Daniel Adams, another portfolio advisory specialist, "Desai was polite and professional" in delivering the question. (D.E. 21-4 at 2.)

Adams perceived Nguyen's answer "to be negative, combative, and the tone to be unnecessary." (D.E. 21-4 at 2.) According to Desai, the response by Nguyen "was somewhat negative, slightly disappointing in the sense that he didn't really give us a direction." (D.E. 21-1 at 16.) Despite disappointment in the answer, according to Desai, he "just sat there" without saying anything. *Id.* Adams did not observe Desai "lose control of his emotion, show that he was unhappy, or react negatively in any manner." (D.E. 21-4 at 2.)

From Nguyen's perspective, Desai was "animated" and "the tone and the tenor of the conversation" was "a little bit disrespectful in how it was approached." (D.E. 21-3 at 8.) Desai's "body language was quite negative[,]" according to Nguyen and included "[a]rms crossed, sighing, huffing, [and] puffing." *Id.*

Desai testified that, as he returned to his desk after the meeting, Neil Blundell, who was Nguyen's subordinate and Yasharian's supervisor, talked to Desai about Nguyen's response, conveying that it was "not the message he would have delivered from [Nguyen]." (D.E. 21-1 at 16; D.E. 21-2 at 5.) Nguyen testified that he did not speak with Desai about the interaction. (D.E. 21-3 at 9–10.) Overall, Nguyen recalled nothing "extraordinarily negative" in his limited interactions with Desai throughout his employment. *Id.* at 10.

In December 2018, Yasharian and Desai discussed his interaction with Nguyen at the November meeting. (D.E. 21-1 at 17.) According to Desai, Yasharian explained that Nguyen thought Desai was being negative. *Id.* at 18. Desai testified that they discussed "more constructive ways of channeling emotions[,]" including talking directly to Yasharian. *Id.* Yasharian testified at

his deposition that, in retrospect, he did not have a positive feeling that the issue would be resolved moving forward. (D.E. 21-2 at 10.)

Desai testified that, "a couple of weeks after [that meeting,]" he emailed Nguyen and requested a meeting to "clear the air." (D.E. 21-1 at 28; D.E. 21-3 at 10.) According to Desai, Nguyen responded, "There's nothing to clear up. It's fine." (D.E. 21-1 at 28.) Other than the one incident, Desai testified that he was not informed of or counseled about any communication issue. (D.E. 21-1 at 27.)

Early in 2019, Yasharian conducted performance evaluations of Desai and other members of the advisory team, including John Salett, Joshua Lee, and Neil Patel. (D.E. 21-2 at 33–53.) The evaluation ratings for Salett, Lee, and Patel were identical. *Id.* at 38–53. All three received an "Effective" rating in each of five areas of competency and an "Effective" rating for overall performance. *Id.* Yasharian advised all three and Desai that their relationships with Nguyen and Blundell were important for their futures. *Id.* at 37, 43, 47, 52.

In contrast to the three coworkers, Desai received a "Strong" rating, which is higher than "Effective," in each of these categories:

- Collaborates and builds trusting relationships
- Passion for excellence through strong execution

- Promotes innovation and continuous improvement
- Thinks ahead and makes fact-based decisions

(D.E. 21-2 at 35; D.E. 21-3 at 8.) The only area of competency in which Desai received a lower rating than Salett, Lee, and Patel was "Communicates effectively and respectfully." (D.E. 21-2 at 35, 41, 46, 51. Yasharian rated Desai as "Needs Improvement/Development" in that area. *Id.* at 35. Yasharian explained:

> Key area to be improved upon: Nguyen's perception of [Desai's] inability to control emotions; Nguyen was disappointed at visible display of unhappiness in November team meeting and further disappointed at perceived negativity in the days that followed. While I didn't personally witness this, I too heard 3rd hand (from several people) that it wasn't constructive. Key concerns voiced to me were around [Desai's] potential to lose control of emotions; [Desai] and I had a very constructive conversation about this in December and **I am certain that there will be no further concerns on this topic**; we discussed [Desai's] overall passion and enthusiasm for improving our product offering, and how this passion may have allowed his emotions to get a bit ahead of him; we agreed that more constructive methods of channeling emotions would include talking directly to me during any times of angst or uncertainty[.]

*Id.* at 36-37 (emphasis added).

Despite the concern about negativity, Yasharian gave Desai an overall performance rating of "Strong," a higher rating than "Effective." (D.E. 21-2 at 37; D.E. 21-3 at 8.) Yasharian described Desai as a "strong contributor to the team in 2018" whose "leadership was very much welcomed." (D.E. 21-2

at 36.) Yasharian wrote "[Desai] comes to all meetings with a thoughtful opinion based on solid logic and his past experience. Our one-on-one, informal conversations have been particularly insightful and useful to me." *Id.*

Continuing with positive comments, Yasharian noted that Desai's "ability to distill large amounts of data down to actionable insight is extremely impressive." *Id.* Yasharian listed nine of Desai's characteristics that "greatly benefited" the team. *Id.* Among the comments about those characteristics, Yasharian wrote that Desai "never said 'No' to a request for his participation on a project [and] on many occasions proactively volunteered to pitch in on projects where he knew he could be helpful." *Id.*

At his deposition, Yasharian contradicted the high praise, stating that, "[l]eading up to [Desai's] performance review and post that performance review," Yasharian did not think that Desai was a hard-working employee, citing "inability to manage his emotions and his negativity." (D.E. 21-2 at 6.) Yasharian opined in retrospect that Desai "was behaving in a way that was detrimental to our team and he was working against the goals we had as a team[,]" specifically the goal of professionalism. *Id.* Yasharian further stated that Desai's failure to work toward the team's goal caused Yasharian to be disappointed in Desai's reliability. *Id.*

Yasharian's deposition testimony described several other behaviors that were not addressed in Desai's evaluation, including not participating in meetings and "[h]uffing and puffing, eye-rolling, [and] leaning back [with] arms folded." (D.E. 21-2 at 9, 15.) Yasharian also testified that, in private meetings with Desai, Desai would vent about how little trust or belief he had in team leadership and voice his displeasure at the direction the team was headed. *Id.* at 9. Yasharian testified that he spoke to Desai about these issues after the performance evaluation but did not discipline him and did not document the behavior or counseling. *Id.* at 16–17.

In February 2019, Desai applied for and was granted ten weeks of paid parental leave. (D.E. 21-1 at 10–11.) He scheduled the leave for March 15 through May 27, 2019. *Id.* at 12. Desai testified that he was concerned about taking ten weeks because of the comments by other employees and sought advice from human resources. *Id.* Desai testified that a human resources representative told Desai that his feelings were understandable as the policy was relatively new and represented a cultural shift but that others "had already taken advantage of the policy with no adverse outcome." *Id.* at 13. According to Desai, Yasharian also reassured Desai, stating, "If you're entitled to it, you can take the leave." *Id.* at 12.

8

At least as early as March 2019, according to Desai, it was common knowledge that a merger of Oppenheimer into Invesco was upcoming. (D.E. 21-1 at 12–13.) At the time of the merger, Invesco and Oppenheimer each employed nine portfolio specialists. (D.E. 21-3 at 13.) While Desai was on leave, Yasharian had the duty of deciding which portfolio advisory specialists would be terminated in the reduction of force. (D.E. 21-2 at 11–12; D.E. 21-3 at 13; D.E. 23 at 4.) Yasharian testified that he selected for termination eight from the Oppenheimer employees and only Desai from the Invesco employees. (D.E. 21-2 at 12.)

At his deposition, Yasharian explained how he decided, stating that he weighed "one's professionalism; . . . one's attitude; . . . one's intellectual knowledge on the tasks they were responsible for, meaning their competency to do the job; . . . [and one's] enthusiasm to do the job." (D.E. 21-2 at 12.) For the Invesco employees, Yasharian considered the ratings in the 2018 performance evaluations as part of his decision calculus. *Id.* According to Nguyen, he discussed the candidates for job elimination with Yasharian, but was not involved in the final decision. (D.E. 21-3 at 13.)

While on leave in late April, Desai received a termination letter notifying him that his position was being eliminated as part of a reduction in

force resulting from the merger with Oppenheimer. (D.E. 21-1 at 19–20.) The letter stated that Desai's termination was to be effective May 25, 2019, but that his leave would continue according to the agreed terms. (D.E. 21-1 at 19.)

Plaintiff also received a separation agreement and a disclosure entitled "Employees Selected for Termination Program." (D.E. 21-1 at 19–20.) According to the latter document, "[t]he company made decisions to place employees in the merged organization based on the location of Invesco facilities in the merged organization as well as based on job skills, individual performance, and capabilities of the considered employees." (D.E. 1-1 at 20.) In discovery responses, Invesco stated that Desai's "position was eliminated due to his ratings on his performance reviews." (D.E. 23 at 4.)

The termination notice stated that it would take effect on May 25, 2019, but his leave benefits would extend until the end of his scheduled FMLA leave on May 27, 2019. (D.E. 21-1 at 19.) Desai testified that, despite being in the middle of his parental leave, he found it necessary to turn his attention to job hunting. (D.E. 21-2 at 25.) At the time of his termination, according to Desai, he was the second-longest tenured employee on the Invesco portfolio advisory team. (D.E. 21-1 at 21.) Desai filed this suit asserting claims for FMLA retaliation and interference.

Invesco moved for summary judgment on both of Desai's claims, arguing that he received all the FMLA leave to which he was entitled and that he failed to produce evidence that, but for his taking FMLA leave, Invesco would not have selected him for termination. (D.E. 20.) Desai filed a response (D.E. 21), and Invesco filed a reply (D.E. 22.) Invesco's motion for summary judgment is ripe for decision.

## 2. Standard of Review

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

"The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant must "go beyond the pleadings," using competent summary judgment evidence to cite to "specific facts" showing a genuine issue for trial. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010) (quoting *Celotex Corp.*, 477 U.S. at 324). The court reviews all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Lincoln Gen. Ins. Co.*, 401 F.3d at 350.

### 3.  Evidentiary Objections

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Speculation is not competent summary judgment evidence. *See Roach v. Allstate Indem. Co.*, 476 F. App'x 778, 780 (5th Cir. 2012). Hearsay, which is a statement made outside the current litigation that is "offer[ed] in evidence

to prove the truth of the matter asserted in the statement[,]" is not admissible evidence. Fed. R. Evid. 801, 802.

Invesco objected to two of Desai's exhibits: (1) the affidavit of Daniel E. Adams (Adams) (D.E. 21-4); and (2) Invesco's Third Amended Answers and Objections to Plaintiff's First Set of Interrogatories (D.E. 23.).

Invesco objected to portions of Adams's affidavit because they contain "speculative and hearsay assertions" about other employees' feelings and beliefs and because Adams failed to establish personal knowledge about what occurred at the November 2018 team meeting. (D.E. 22 at 8–9.)

Having reviewed Adams's affidavit, the court concludes that it contains inadmissible testimony. The following statements are not within Adams's personal knowledge, are speculative, and rely on hearsay:

- "Mr. Desai's question was one that our team was very interested in knowing the response to."

- "I am also aware that a number of employees have felt that Mr. Nguyen discouraged them and other employees from taking extended medical or FMLA leaves including Billy Desai and Joshua Lee."

- "It was well known within the department that taking an extended leave was frowned upon by Mr. Nguyen as taking leave would cause additional work for the other employees within the department."

13

- "It is my belief that any employee who needed leave would have felt pressured to take the least amount of time off possible or, if they took an extended leave, would fear retaliation."

(D.E. 21-4 at 2–3.)

Adams's observations and perceptions during the November 2018 meeting are admissible. It is clear that he was present at the meeting, despite not specifically saying so in his declaration. The court sustains in part and overrules in part Invesco's objections to Adams's affidavit.

Invesco also objected to Desai's reliance on Invesco's interrogatory responses because they were not attached to his response. Since the filing of Invesco's reply, Desai has filed the missing interrogatory responses. Invesco's objection is denied as moot.

### 4. Analysis of Desai's FMLA Claims

"The FMLA requires covered employers to grant covered employees up to twelve weeks of unpaid leave for certain qualifying reasons, such as the birth of a child . . . ." *DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (citing 29 U.S.C. § 2612(a)(1)). The statute makes it illegal for employers: (1) "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter" or (2) "to interfere with, restrain, or deny the exercise of or the attempt to

14

exercise" any right granted under the FMLA. 29 U.S.C. § 2615(a). The former prohibition is interpreted to include protection against termination for having exercised FMLA rights. *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (2013) (citing 29 C.F.R. § 825.220(c)).

### A. Retaliation Claim

#### i.    Burden-shifting framework

In the absence of direct evidence, FMLA retaliation claims are analyzed under the burden-shifting framework first explained in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wheat v. Florida Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016). Under that framework, the burden falls first on the employee to set out a prima facie case of retaliation, which requires proof that: "(1) [the employee] engaged in protected activity; (2) the employer took a materially adverse action against [the employee]; and (3) a causal link exists between [the] protected activity and the adverse action." *Id.*

If the employee successfully produces evidence in support of each element of the prima facie case, "the burden shifts to the employer to state a legitimate, non-retaliatory reason for the adverse action." *Wheat*, 811 F.3d at 710 (internal quotation marks omitted) (quoting *Davis v. Fort Bend Cty.*, 765 F.3d 480, 490 (5th Cir. 2014)). The employer's burden is one of production,

not persuasion. *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)) (addressing an FCA retaliation claim).

"After the employer states its [nonretaliatory] reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Feist*, 730 F.3d at 454 (addressing ADA and Title VII retaliation claims). The employee must show "that the adverse action would not have occurred but for [the] employer's retaliatory motive." *Badgerow v. REJ Props., Inc.*, No. 19-30584, 2020 WL 5494911, at *4 (5th Cir. Sept. 11, 2020) (quoting *Feist*, 730 F.3d at 454) (addressing a Title VII retaliation claim).

The employee may survive summary judgment by showing "a conflict in substantial evidence on the question of whether the employer would not have taken the action 'but for' the protected activity." *Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x 227, 231 (5th Cir. 2018) (internal quotation marks omitted) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)). "The combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Badgerow*, 2020 WL 5494911, at *4 (internal alterations omitted) (quoting

16

*Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999));

*Garcia*, 938 F.3d at 244 (quoting same). Ultimately, the employee must

produce evidence that the employer's stated reason "is false or unworthy of

credence." *DeVoss*, 903 F.3d at 492 (internal quotation marks omitted).

### ii.     Fifth Circuit caselaw on change in causation standard

According to recent Fifth Circuit caselaw, two decisions of the U.S.

Supreme Court have raised the question "whether a mixed-motive causation

standard is ever proper for FMLA retaliation claims." *Adams v. Mem'l*

*Hermann*, 973 F.3d 343, 353 (5th Cir. 2020) (citing *Ion*, 731 F.3d at 389–90).

In *Adams*, the Fifth Circuit observed that the U.S. Supreme Court's rejection

of mixed-motive causation in retaliation cases filed under Title VII of the Civil

Rights Act of 1964 (Title VII) and the Age Discrimination in Employment

Act (ADEA) "places in serious doubt the viability of that standard as applied

to retaliation claims brought under the FMLA." *Id.* (discussing *Univ. of Tex.*

*Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (ruling that but-for causation

applies in retaliation cases filed under Title VII) and *Gross v. FBL Fin. Servs.,*

*Inc.*, 557 U.S. 167 (2009) (ruling that but-for causation applies in retaliation

cases filed under the ADEA)).

In this period of uncertainty in the law, the Fifth Circuit has held that an FMLA retaliation claim survives summary judgment upon a showing of a conflict of substantial evidence on but-for causation. *See Wheat*, 811 F.3d at 710 (declining to decide whether but-for causation is the standard in FMLA cases because the plaintiff's claim survived the heightened showing required for but-for causation). The Fifth Circuit's analysis of but-for causation is uniformly applied to retaliation claims arising under various other statutes. *Cf. Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 242 (5th Cir. 2019) (noting identity of burden-shifting and but-for analysis between retaliation claims under the False Claims Act (FCA) and the ADEA); *Wheat*, 811 F.3d at 710 (analyzing an FMLA retaliation claim together with a Title VII retaliation claim); *Feist v. La., Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013) (analyzing an Americans with Disabilities Act (ADA) retaliation claim together with a Title VII retaliation claim).

Due to a sparsity of cases applying recent but-for standards to FMLA retaliation claims, the court takes guidance from retaliation cases brought under the FCA, the ADEA, and Title VII to determine whether Desai has demonstrated a conflict of substantial evidence on but-for causation.

18

### iii. Analysis under the burden-shifting framework

#### a. Prima facie case and proffered reason

Invesco argues that Desai can produce no direct evidence of retaliation. Desai does not base his retaliation claim on direct evidence but relies on circumstantial evidence. Therefore, the burden-shifting analysis is applied. Invesco contends that Desai fails to meet his burden at both the prima facie and pretext steps. To meet its own burden in the analysis, Invesco argues that reduction in force is a legitimate reason for terminating Desai.

The only prima facie element in dispute is the third element requiring evidence of a causal link. Temporal proximity satisfies the causal link at the prima facie stage. *Garcia*, 938 F.3d at 241 (stating, in an FCA retaliation case, that the Fifth Circuit requires "only a 'causal connection' between a protected activity and an adverse employment action, which could be established simply by showing close enough timing between the two events").

Invesco made the termination decision after Desai invoked his FMLA rights and notified Desai of his termination while he was on leave with a month remaining before his scheduled return. The effective date of the termination was just a few days before Desai was scheduled to return to work.

This evidence of temporal proximity satisfies the prima facie element of causal link.

The burden then shifts to Invesco to articulate a legitimate, nonretaliatory reason for terminating Desai. In its motion, Invesco states that Desai was selected for termination as a consequence of its acquisition of and merger with Oppenheimer.

"Eliminating a position for economic reasons during a [reduction in force] is a valid, nondiscriminatory reason for discharging an employee." *Holloway v. ITT Educ. Servs., Inc.*, Civil Action No. H-13-1317, 2014 WL 4273896, at *10 (S.D. Tex. Aug. 28, 2014) (citing *Equal Emp't Opportunity Comm'n v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (addressing pretext in an ADEA discrimination case)) (addressing an ADA claim). Desai does not challenge the legitimacy of Invesco's business decision to reduce its force.

The key issue in this case is whether Invesco's stated reason for selecting Desai from a pool of nine Invesco employees and nine Oppenheimer employees, all of whom held the same position, was a pretext and that the true reason was retaliation for taking parental leave. In its motion, Invesco represents that "Yasharian selected Desai for the group termination program

based on designated selection criteria, including Desai's receipt of a 'Needs Improvement/Development' rating, that were unrelated to Desai's FMLA leave." (D.E. 20 at 9.)

### b. Pretext standards

Because Invesco proffered a legitimate, nonretaliatory reason for its decision, Desai must show a conflict of substantial evidence of a retaliatory motive. *Musser*, 944 F.3d at 561; s*ee also Rodriguez*, 739 F. App'x at 231. "Evidence is 'substantial' if it is of such quality and weight that reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions." *Musser*, 944 F.3d at 561–62; (quoting *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 658 (5th Cir. 2012)).

While the court should not second-guess business decisions or act as personnel managers, the court is tasked with determining whether the employee has presented evidence that undermines the credibility of the employer's stated reason. *See Kean v. Jack Henry & Assocs., Inc.*, 577 F. App'x 342, 351 (5th Cir. 2014) (noting, in an ADEA discrimination case, where the plaintiff's arguments did not undermine the employer's stated reason for its employment decision, that the court should not second-guess the employer's decision); *Pennington v. Tex. Dep't of Family & Protective Servs.*,

21

469 F. App'x 332, 339 (5th Cir. 2012) (stating, in a Title VII retaliation case, that the court should not second-guess an employer's business decisions "so long as those decisions are not the result of discrimination"). The court's role is to determine whether Desai raised a fact issue on pretext by producing evidence that could support a finding that Invesco would not have selected Desai for termination in the absence of his taking parental leave.

The Fifth Circuit issued two FCA retaliation cases in 2019 that reviewed prior decisions "shedding light on the quality of evidence needed to survive summary judgment at the pretext stage." *Musser*, 944 F.3d at 562; *see Garcia*, 938 F.3d at 244. Both cases established a baseline by citing two prior decisions in which the evidence presented was insufficient to carry the retaliation claims beyond summary judgment. *See Musser*, 944 F.3d at 562 (citing *United States ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318 (5th Cir. 2017) (addressing an FCA retaliation claim), and *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802 (5th Cir. 2007) (addressing a Title VII retaliation claim)); *Garcia*, 938 F.3d at 244 (citing same).

*Strong* held that temporal proximity alone is not enough to survive summary judgment. *Musser*, 944 F.3d at 562 (citing *Strong*, 482 F.3d at 808); *Garcia*, 938 F.3d at 244 (citing same). *Solvay Pharm., Inc.*, held that temporal

22

proximity with the addition of positive performance reviews was insufficient under the facts of that case. *Musser*, 944 F.3d at 562 (citing *Solvay Pharm, Inc.*, 871 F.3d at 334); *Garcia*, 938 F.3d at 244 (citing same).

In both *Musser* and *Garcia*, the Fifth Circuit distinguished *Shackelford*, a case in which the plaintiff's Title VII retaliation claim survived summary judgment on evidence of "tight temporal proximity, unfounded performance concerns, warnings from other employees not to engage in the protected activity, and disparate treatment." *Musser*, 944 F.3d at 562 (citing *Shackelford*, 190 F.3d at 409); *see Garcia*, 938 F.3d at 244 (citing same).

In *Musser*, the Fifth Circuit also distinguished *Garcia* from *Strong* and *Solvay Pharm., Inc. Musser*, 944 F.3d at 562. The retaliation claim in *Garcia* survived summary judgment on evidence of:

> temporal proximity between his protected activity and termination, his dispute of facts leading up to his termination, disparate treatment of a similarly situated employee, harassment from his supervisor after the company knew of his protected activity, the stated reason for the termination had been known to the company for years, and the company stood to lose millions of dollars if its conduct was discovered.

*Id.* (citing *Garcia*, 938 F.3d at 244).

### c. But-for causation applied

This court concludes that the evidence now before it falls somewhere between the evidence produced in *Shackelford* and that produced in *Garcia*. In support of a finding of pretext, Desai produces evidence of: (1) tight temporal proximity; (2) falsity of Invesco's stated reason that Desai was terminated for "Needs Improvement/ Development" rating; (3) disparate treatment of other employees; and (4) warnings from other employees. The court finds, as did the Fifth Circuit in *Shackelford* and *Garcia*, that the substantial evidence supports an inference of pretext.

As addressed above in the discussion of the prima facie case, the decision to terminate Desai was made while he was on FMLA leave, and the effective date preceded his scheduled return date. The timing between his protected activity and his termination could be no closer. *See Shackelford*, 190 F.3d at 408 (finding tight temporal proximity when the adverse action occurred on the same day as the protected activity).

Invesco argues in its motion that it based the termination decision on "designated selection criteria, including Desai's receipt of a 'Needs Improvement/Development' rating." (D.E. 20 at 9.) Here, evidence of inconsistent articulations of the criteria used in deciding whom to terminate,

evidence of Invesco's contemporaneous response to the conduct underlying the "Needs Improvement/Development" rating, and Invesco's after-the-fact recasting of Desai's performance history undermine the credibility of Invesco's stated reason for selecting Desai for termination in the reduction of force.

Invesco represented in a document sent with the termination notice that the following criteria were used in the selection of employees for termination: (1) location of Invesco facilities in the merged organization; (2) job skills; (3) individual performance; and (4) capabilities of considered employees. In contrast, Yasharian explained that he weighed: (1) professionalism; (2) attitude; (3) job competency; and (4) enthusiasm. Although job competency appears on both Invesco's and Yasharian's lists of criteria, no other criterion is on both lists. The specific category of competency in communicating effectively and respectfully appears on neither.

Yasharian's criteria is weighted toward subjective assessments of professionalism, attitude, and enthusiasm. These differences between the stated criteria and the criteria allegedly used by the decision maker raise an inference that Invesco did not rely on established, objective criteria in selecting Desai for termination, which, in turn, undermines the legitimacy of

its proffered reason for termination. *See Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 652–53 (5th Cir. 2004) (finding objective criteria where a human resources manager eliminated from the pool of employees considered for a reduction of force those with high job utilization percentages, those with extensive training, those slated for transfers, and those meeting other predetermined criteria); *cf. Holloway*, 2014 WL 4273896, at *10 (finding that undisputed evidence showing that the employer based the termination decision on objective criteria that was established prior to when the employee applied for FMLA leave precluded an inference of pretext).

Invesco's contemporaneous handling of the only incident underlying Desai's "Needs Improvement/Development" rating also undermines Invesco's reliance on that rating as the deciding factor for termination. The evaluation explained that Desai's need to improve was based on Nguyen's disappointment at Desai's "visible display of unhappiness in November team meeting and further disappointed at perceived negativity in the days that followed." (D.E. 21-2 at 36.) Invesco's only response was a meeting between Desai and Yasharian, which the latter described as constructive, stating that he anticipated no further issues. No formal disciplinary action was taken.

Further, Nguyen's own response reflected a lack of seriousness. Nguyen denied Desai an audience to "clear the air" because, as Nguyen told Desai, there "was nothing to clear up." (D.E. 21-1 at 28.) No contemporaneous evidence supports an inference that the incident at the meeting was especially serious or was part of a pattern of poor performance. *Cf. Ion*, 731 F.3d at 392–93 (finding employer's stated reason for termination disingenuous and contradicted by the evidence of its contemporaneous handling of absences and poor performance); *Guadalajara v. Honeywell Int'l, Inc.*, 224 F. Supp. 3d 488, 510–11 (W.D. Tex. 2016) (finding a professed concern of seriousness that was inconsistent with actions taken at the time of the issue to be evidence of pretext).

Yasharian's retrospective deposition testimony, which contradicts the contemporaneous evidence, raises further suspicion as to the reason given. In the performance evaluation, Yasharian described Desai, amid other praise, as a strong contributor to the team who greatly benefitted the team, exhibited leadership, made thoughtful contributions to all meetings, provided insight, volunteered on projects, and distilled data into actionable insight. Yasharian gave Desai high marks in every category other than communication skills. *Cf. Solvay Pharm., Inc.*, 871 F.3d at 334 (stating that, in combination with

27

temporal proximity, evidence of "highly positive performance reviews" up to the protected activity and of a decline in treatment immediately after the protected activity can satisfy but-for causation).

In his deposition, however, Yasharian stated that he did not feel positive that the issue would resolve following their one-on-one meeting. He also testified that he did not believe at that time that Desai was a hard-working employee and thought he was working against the team's professionalism goal. Yasharian said that Desai vented to Yasharian about displeasure in the direction the team was headed after the meeting in which Yasharian encouraged Desai to do just that. According to Yasharian, Desai continued to nonverbally exhibit unhappiness and cynicism. A jury could find Yasharian's testimony to be a post hoc rationalization in support of his decision, which would open the door for a fair-minded jury to infer that Invesco's stated justification is disingenuous.

In further support of a finding of pretext, Desai points to the performance evaluations of three coworkers. He contends that a facial comparison of his evaluation with the evaluations of Salett, Lee, and Patel gives rise to an inference that he was treated differently and provides evidence of the falsity of Invesco's stated reason for terminating Desai. Desai received

the rating of "Strong" in four of five areas of competency and overall while his counterparts received lower, "Effective" ratings across the board.

To show disparate treatment, the plaintiff must produce evidence that similarly situated employees were treated differently "under nearly identical circumstances" as those faced by the comparator. *Garcia*, 938 F.3d at 244 (quoting *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259–60 (5th Cir. 2009)). "Employees are similarly situated when they held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (internal quotation marks omitted) (quoting *Lee*, 574 F.3d at 260). The important aspect of nearly identical circumstances is that the basis for termination "must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (internal quotation marks omitted) (quoting *Lee*, 574 F.3d at 260). "Nearly identical" is not synonymous with "identical." *Lee*, 574 F.3d at 260.

The evidence is undisputed that Desai, Salett, Lee, and Patel held the same position, were all supervised by Yasharian, and had their employment status determined by Yasharian. It is further undisputed that Salett, Lee, and Patel received more favorable treatment as they were not selected for

termination in the reduction in force. Invesco contends that Salett, Lee, and Patel are not relevant comparators because none received a "Needs Improvement/ Development" rating in any area of competency. That assertion lacks the proper focus.

By relying on the evaluation ratings to justify its termination decision, Invesco asserts that the four of them were, in all other ways, identical. The evidence that Desai received higher ratings in four of five areas of competency and a lower rating in only one raises a salient fact question whether the four were also nearly identical in their job performance. Based on the documented evidence of job performance, fair-minded jurors could conclude that Salett, Lee, and Patel were nearly identical to Desai, giving rise to a finding of disparate treatment. *See Garcia*, 938 F.3d at 245 (finding evidence of disparate treatment to be relevant to pretext).

In further support of an inference of pretext, Desai testified that he had been warned not to take parental leave in excess of three weeks by two coworkers, one of whom had his bonus reduced after taking leave. (D.E. 21-1 at 12.) Warnings by personnel not involved in making the employment decision may provide evidence of pretext. *Shackelford*, 190 F.3d at 402, 409

(finding that warnings of various employees to the plaintiff not to get involved in a pending suit if she wanted to keep her job provided evidence of pretext).

Invesco did not object to Desai's testimony about the warnings but did argue in their reply that "statements that Defendant was hostile towards employees who utilized more than three weeks of FMLA leave" were "inadmissible hearsay." Desai's testimony is hearsay and is not admissible in its present form. It appears, however, that the evidence may be capable of being made admissible for trial, for example, if the coworker testified. *See* Fed. R. Civ. P. 56(c)(2); *Chevron Oronite Co. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 227 n.8 (2020) ("On summary judgment, evidence, to be considered, need not be offered in a form admissible at trial, it need only be *capable* of being 'presented in a form that would be admissible in evidence.'") (quoting Fed. R. Civ. P. 56(c)(2)).

Drawing all inferences in favor of Desai and viewing the evidence of pretext in combination, the court finds substantial evidence shows fair-minded jurors could reach different conclusions as to whether Invesco terminated Desai in retaliation for taking FMLA leave. Importantly, Desai need not prove his case at summary judgment; he need only "produce[] enough evidence to survive summary judgment." *Garcia*, 938 F.3d at 246 (stating that the court's

31

holding did not mean that the plaintiff would prevail at trial or that the employer's proffered reasons for termination were not the real reasons).

### B. Interference Claim

An employee who takes FMLA leave is entitled to be restored to the position held prior to the commencement of leave or to an equivalent position. 29 U.S.C. § 2614(a)(1). In order to demonstrate that the employer interfered with his right of reinstatement, the employee must produce evidence that: "(1) he was an eligible employee; (2) his employer was subject to FMLA requirements; (3) he was entitled to leave; (4) he gave proper notice of his intention to take FMLA leave; and (5) his employer denied him the benefits to which he was entitled under the FMLA." *DeVoss*, 903 F.3d at 490.

Claims arising from the denial of job reinstatement do not require a showing of the employer's discriminatory intent. *DeVoss*, 903 F.3d at 491 (quoting *Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 (5th Cir. 2013)). Instead, the employer bears the burden of showing "that the employee would have lost his position even had he not taken FMLA leave." *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 682 (5th Cir. 2013). In other words, the right is not unlimited; the employee is entitled to no right greater than that to which the employee would have been entitled had the employee not taken leave.

29 U.S.C. § 2614(a)(3); *see Shirley,* 726 F.3d at 682 (citing 29 C.F.R. § 825.216(a)). If the employer is able to make that showing by articulating a legitimate cause for termination, the employee "ha[s] to present evidence sufficient to raise a jury question that [the employer's] stated reason for firing [the employee] . . . was pretextual." *Shirley*, 726 F.3 at 683.

The analysis of this claim takes a very similar path to that of the retaliation claim. Desai easily satisfies all elements of an interference claim. Invesco does not challenge the first four elements. As to the fifth element, Invesco contends that Desai was not denied any benefit to which he was entitled because he received and completed his approved FMLA leave. This argument misunderstands Desai's interference claim. Desai does not contend that Invesco interfered with his right to take FMLA leave but that Invesco interfered with his right to reinstatement following the leave period. The statute explicitly grants employees a right to reinstatement after a period of FMLA leave. Desai was denied that benefit.

The next question is whether Desai would have been entitled to that right had he not taken FMLA leave. Invesco argues that Desai would not have been entitled to that right because he was terminated in a reduction of force resulting from the Oppenheimer merger. For the reasons discussed in the

33

section on retaliation, Desai has raised a jury question on pretext. Therefore, the court finds Invesco does not meet its summary judgment burden of establishing that Desai would have lost his position even if he had not taken FMLA leave.

### 5. Conclusion

For the reasons explained above, the court recommends that Invesco's motion for summary judgment be denied.

The parties have fourteen days from service of this memorandum and recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S. 140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas, on February <u>10</u>, 2021.

Peter Bray
United States Magistrate Judge

34